UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――

Michael C. Williams,

         Plaintiff,

  v.

Robert Restaino, *in his official capacity as
Mayor of the City of Niagara Falls, New York, et al.*,

         Defendants.

**Report and Recommendation**

18-CV-515 (JLS)

―――――――――――――――――――――――――

**I. INTRODUCTION**

  On August 2, 2016, plaintiff Michael Williams had his child removed from his custody based on allegations of abuse and neglect.  Custody proceedings ensued in Niagara County Family Court, including a permanency hearing held on April 19, 2017.  A final order issued from Niagara County Family Court on July 28, 2017 placing plaintiff's child in the custody of the Niagara County Commissioner of Social Services to reside in a certified foster home.

  Plaintiff did not like the outcome of the proceedings in Niagara County Family Court.  In addition to whatever challenges he might have attempted at the state-court level, plaintiff, acting *pro se*, filed one original and three attempted amended complaints in federal court under 42 U.S.C. § 1983.  (Dkt. Nos. 1, 6, 9, 10.)  Plaintiff added or changed defendants with each filing, but he was perfectly clear each time about the help that he wanted from federal court: "I want my child to be returned to me as soon as possible."  (Dkt. No. 10 at 11.)

  Several defendants in the case now have filed motions to dismiss plaintiff's original and/or attempted amended complaints under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Dkt. Nos. 24, 25, 27.)  Procedurally, the moving defendants object that plaintiff attempted to amend his complaint three times without consent or leave of court.  On substance, the

moving defendants argue that the Court lacks subject-matter jurisdiction over the case in more than one way and that they have statutory immunity from suit for the various roles that they played in the proceedings in Niagara County Family Court.

Plaintiff had filed certain documentary exhibits before he was given a deadline of January 17, 2020 to respond to the motions. Plaintiff filed no response to the motions. The case was referred to this Court on January 15, 2020 under 28 U.S.C. § 636(b). (Dkt. No. 34.)[1] Having reviewed all of the motion papers and exhibits in the record, the Court has deemed the motions submitted on papers under Rule 78(b). For the reasons below, the Court recommends granting the pending motions and dismissing the case as against all defendants for lack of subject-matter jurisdiction.

## II. BACKGROUND

This case appears to be an attempt by plaintiff to have a federal court intervene in a child-custody matter. Plaintiff filed his original complaint on May 7, 2018, naming unspecified "John Doe" Niagara Falls police officers as defendants. (Dkt. No. 1.) The essence of the complaint, as far as the Court can understand it, is that on the morning of August 2, 2016, police officers allegedly encountered plaintiff to inquire about the whereabouts of his child. (*Id.* at 3.) Plaintiff suggests that, during this encounter, he was detained without a warrant and prevented from leaving his apartment building to enter his car and to go to work. (*Id.*) According to plaintiff, once he told the officers that his child was in daycare, the officers, in conjunction with Niagara County Social Services, took custody of his child. (*Id.*) Niagara County Social Services "is still trying to terminate my parental rights and have my child adopted out of my care." (*Id.*) When plaintiff returned to his apartment building around 2:50 PM, he allegedly found that police officers and Niagara County Social Services

---

[1] The case originally was assigned to District Judge Lawrence J. Vilardo. On January 6, 2020, the case was transferred to newly appointed District Judge John L. Sinatra, Jr. (Dkt. No. 32.)

representatives had entered his apartment to confirm that the apartment had no food and was not a safe place for his child. (*Id.* at 4.) As injuries, plaintiff claimed the emotional and mental stress of not knowing what became of his child and not having seen the child since March 2, 2018. (*Id.* at 5.) The complaint ended with the following request for relief; for reasons that will become apparent below, the Court is reprinting the entire paragraph (with minor editing for spelling and grammar):

> What I would like the court to do is have DSS [Niagara County Social Services] return my child to me. I feel very much that they are lying on the reports that they have and the statements they are saying. I can prove it. I have records and daily report sheets on my child before my child was removed from my home, also recordings. I would like this information to be heard. I would like my child to be returned immediately.

(*Id.*)

After the original filing, plaintiff tried to amend his complaint three times—on February 4, October 15, and October 22, 2019. (Dkt. Nos. 6, 9, 10.) The Court will address the propriety of the attempted amendments if needed but will summarize changes in the amendments briefly. In the first amendment, plaintiff added a police official, representatives of Niagara County Social Services, and then-Mayor of Niagara Falls Paul Dyster ("Dyster").[2] Plaintiff repeated the narrative about police officers and Niagara County Social Services taking custody of his child. (Dkt. No. 6 at 4.)

---

[2] Robert Restaino became Mayor of the City of Niagara Falls, New York on January 1, 2020. Because plaintiff has made reference to policies and has not pled any direct involvement by Paul Dyster, the Court concludes that plaintiff sued Dyster only in his official capacity. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law.") (internal quotation marks and citations omitted). Consequently, Robert Restaino is automatically substituted for Dyster under Rule 25(d). The Clerk of the Court is directed to replace the defendant currently listed as "Paul Dyster, Mayor of City of Niagara Falls" with "Robert Restaino, *in his official capacity as Mayor of the City of Niagara Falls, New York*." *See Baldwin v. Redwood City*, 540 F.2d 1360, 1364 n.3 (9th Cir. 1976) ("Apparently Mr. Keckley is no longer Mayor of Redwood City. Rule 25(d) of the Federal Rules of Civil Procedure provides for automatic substitution of his successor as a party.").

Plaintiff wrote that the federal basis for his claim was a "violation of civil right[s] because they (DSS and the police) did not have a warrant nor did they have a court order signed by a judge." (*Id.*) Plaintiff requested "justice and [for] them to be held accountable for their action." (*Id.*) On the next page, plaintiff stated the following for relief sought (with minor editing): "I want justice, and the return of my child to me. Also that this does not happen to other families, without a court order or warrant by a judge." (*Id.* at 5.) In the second amendment, plaintiff added defendant Kathleen M. Wojtazek-Garino and stated the following about this defendant's alleged liability (with minor editing):

> I'm now holding Kathleen M. Wojtazek-Garino responsible because she has the authority to return my child back to me. Instead she chose to take one side. She is also trying to have an excuse to terminate my parental rights 1) because of a forensic doctor who lied under oath, which is perjury; 2) his testimony is null and void; 3) she is allowing Social Services to insist on me seeing a forensic doctor who is for criminal court. I am not a criminal, so why are they pressuring me to see this doctor; 4) they imposed on me a service plan to complete, which technically I didn't really have to complete, because there was nothing wrong with me or my child; 5) now Kathleen M. Wojtazek-Garino is trying to say, did I complete the service plan, which is really null and void. Because of a caseworker Debra Wendt who was not legal and certified to be working in child protective services from the beginning.

(Dkt. No. 9 at 5.) For a summary of relief sought, plaintiff stated again that "I want my child to be returned to me as soon as possible and the people who made these claims against me held accountable for false claims." (*Id.* at 8.) In the third amendment, plaintiff clarified that he wanted Dyster held accountable in an official capacity (minor editing included):

> I am holding Mayor Paul Dyster accountable because he is responsible for setting policy, the four John Doe police officers were acting on their own with DSS worker Debra Wendt. And not following official policies of the City of Niagara Falls, at that time on 8/2/2016 around 3 PM, the police officers and DSS showed up at 548 5th Street where my civil rights were violated. No court order signed by a judge, no warrant.

(Dkt. No. 10 at 9.)

4

There is some confusion in the docket as to how many defendants are now present in the case. Several police officers are listed as terminated as of October 23, 2019; that date corresponds to the date when plaintiff's third attempt at amendment was entered, though the propriety of that amendment appears not to have been addressed. In any event, several motions to dismiss now are pending. On December 11, 2019, defendants Anthony Restaino and Leanne Maziarz filed their motion. These defendants argue that several if not all of plaintiff's attempts at amendment are legal nullities because plaintiff never sought consent or leave under Rule 15. (Dkt. No. 24-2 at 2.) Restaino and Maziarz argue on substance that the Court lacks subject-matter jurisdiction over child-custody matters, under the domestic-relations exception. (*Id.* at 6.) These defendants argue further that *Younger* abstention would prevent the Court from exercising jurisdiction over any requests from plaintiff to issue injunctive or declaratory relief interfering with Family Court proceedings and Niagara County. (*Id.* at 9.) Finally, according to Restaino and Maziarz, they have statutory qualified immunity for discharging their Social Services duties under New York Social Services Law § 419. (*Id.* at 12.)

Defendant Wojtszek-Gariano—who has identified herself as the Niagara County Family Court Judge presiding over plaintiff's child-custody case, a fact omitted from the complaint and the attempted amendments—filed her own motion to dismiss on December 13, 2019. (Dkt. No. 25.) The Court has reviewed Judge Wojtszek-Gariano's motion papers; for the sake of brevity, her grounds for dismissal are failure to amend properly under Rule 15; sovereign immunity, since her office is an extension of the state itself; a prohibition on challenging a state-court judgment under the *Rooker-Feldman* doctrine; the domestic-relations exception; judicial immunity; and failure to state a cognizable claim.

5

Finally, defendant Christopher Janicki Howe ("Howe")—a registered state social worker who is a mandatory reporter of suspected child abuse—filed his own motion to dismiss on December 27, 2019. (Dkt. No. 27.) The Court has reviewed Howe's motion papers; for the sake of brevity, his grounds for dismissal are private conduct that cannot be addressed through Section 1983; qualified immunity for people working in child protective services, by way of New York Social Services Law § 419; the statute of limitations governing a report of potential child abuse that Howe made on August 2, 2016; and procedural defects under Rule 15.

Plaintiff responded to the motions by filing two sets of exhibits on December 26 and 27, 2019. (Dkt. Nos. 29, 30.) The exhibits do not address any of the legal issues raised by the moving defendants in their motions. Instead, plaintiff has focused on reiterating the factual assertions from his original complaint and three attempted amendments. Additionally, the exhibits contain information about plaintiff's mental-health history that the Court will not address on substance.[3]

## III.   DISCUSSION

Of the various issues raised in the three pending motions, the domestic-relations exception and the *Rooker-Feldman* doctrine draw the Court's immediate attention because of the implications for subject-matter jurisdiction.

The general standard for dismissal under Rule 12(b)(1) is fairly straightforward. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. U.S.*, 201 F.3d 110, 113 (2d

---

[3] Incidentally, Docket Nos. 29 and 30 include potentially sensitive medical information about plaintiff; plaintiff's child's name and date of birth; and what appears to be a copy of the child's photograph. As a precaution, the Court directed its chambers staff to place Docket Nos. 29 and 30 temporarily under seal in accordance with Rule 5.2. The Clerk of the Court is directed to review Docket Nos. 29 and 30 for either redactions, if appropriate, or for permanent sealing. If permanent sealing turns out to be necessary then the Clerk of the Court is hereby authorized to take the necessary steps without further order.

6

Cir. 2000) (citation omitted).  Defendants have two ways, facial and factual, to challenge subject-matter jurisdiction under Rule 12(b)(1):

> The first way is to mount a challenge which accepts the plaintiff's version of jurisdictionally-significant facts as true and addresses their sufficiency, thus requiring the court to assess whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction.  In performing this task, the court must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly.  For ease in classification, we shall call this type of challenge a "sufficiency challenge."
>
> The second way to engage the gears of Rule 12(b)(1) is by controverting the accuracy (rather than the sufficiency) of the jurisdictional facts asserted by the plaintiff and proffering materials of evidentiary quality in support of that position.  Unlike, say, a motion for summary judgment under Federal Rule of Civil Procedure 56(c), this type of challenge under Federal Rule of Civil Procedure 12(b)(1)—which we shall call a "factual challenge"—permits (indeed, demands) differential factfinding.  Thus, the plaintiff's jurisdictional averments are entitled to no presumptive weight; the court must address the merits of the jurisdictional claim by resolving the factual disputes between the parties.  In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.
>
> The rationale for this praxis is obvious.  A court's authority to hear a particular case is a necessary precondition to the proper performance of the judicial function.  Thus, when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached.

*Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363–64 (1st Cir. 2001) (citations omitted); *see also, e.g.*, *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56–57 (2d Cir. 2016) (summarizing facial challenges, where "the plaintiff has no evidentiary burden," and factual challenges, where "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion reveal the existence of factual problems in the assertion of jurisdiction") (internal quotation and editorial marks and citations omitted); *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (summarizing that "[a] facial attack

concerns an alleged pleading deficiency whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites") (internal quotation and editorial marks and citations omitted).  By invoking the domestic-relations exception and the *Rooker-Feldman* doctrine without seeking a hearing or otherwise challenging the accuracy of plaintiff's assertions, all of the moving defendants have chosen the first path outlined above.

"The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.  As to the right to the control and possession of this child, as it is contested by its father . . ., it is one in regard to which neither the congress of the United States, nor any authority of the United States, has any special jurisdiction.  Whether the one or the other is entitled to the possession does not depend upon any act of congress, or any treaty of the United States or its constitution."  *Ex parte Burrus*, 136 U.S. 586, 593–94 (1890).  "We conclude, therefore, that the domestic relations exception, as articulated by this Court since [*Barber v. Barber*, 16 L. Ed. 226 (1859)], divests the federal courts of power to issue divorce, alimony, and child custody decrees.  Given the long passage of time without any expression of congressional dissatisfaction, we have no trouble today reaffirming the validity of the exception as it pertains to divorce and alimony decrees and child custody orders."  *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *accord Hernstadt v. Hernstadt*, 373 F.2d 316, 317 (2d Cir. 1967) ("Since the very early dicta *In re Burrus*, 136 U.S. 586 (1890), it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and, a fortiori, rights of visitation.").  Here—and putting aside for a moment what likely are procedural problems under Rule 15—plaintiff has stated four times, unequivocally, what he wants from federal court: He lost custody of his child in Niagara County Family Court and wants his child to be returned to him "as soon as possible."  Judge Wojtszek-Gariano has provided details of all of the proceedings that occurred in Niagara County

Family Court.  (Dkt. No. 25-1 at 4–7.)  Without commenting on the substance or making any findings about what happened in Niagara County Family Court, the Court has confirmation in the record that the proceedings culminated in a final judgment concerning the placement of plaintiff's child in a foster home.  Between the existence of a final judgment from state court and plaintiff's explicit and exclusive request to upset that judgment, this Court has two reasons why it cannot entertain this case: the domestic-relations exception and the *Rooker-Feldman* doctrine.  *See, e.g.*, *Botsas v. United States*, 5 F. App'x 69, 70 (2d Cir. 2001) (summary order) ("The *Rooker–Feldman* doctrine provides that federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment.  Where claims raised in a federal action are 'inextricably intertwined' with a state court's determination, dismissal of the federal claims for lack of jurisdiction pursuant to *Rooker–Feldman* is proper.").  Without the power even to entertain the case, the Court is obligated to recommend immediate dismissal as against all defendants without even considering the other arguments that the moving defendants have raised.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court respectfully recommends granting all three pending motions to dismiss (Dkt. Nos. 24, 25, 27).  Because of the procedural quirk regarding plaintiff's attempted amendments and some confusion regarding how many defendants actually are in the case, the Court clarifies that, upon adoption of this Report and Recommendation by Judge Sinatra, the Clerk of the Court will dismiss the case as against all defendants.

## V.   OBJECTIONS

A copy of this Report and Recommendation will be sent to counsel for the parties by electronic filing on the date below; on the date below, plaintiff will be mailed a hard copy via first-class mail at his address of record.  "Within 14 days after being served with a copy of the

recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Any objections must be filed electronically with the Clerk of the Court through the CM/ECF system.

"As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (citations omitted); *see also Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Where parties receive clear notice of the consequences, failure timely to object to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision.") (citation omitted).  "We have adopted the rule that failure to object timely to a magistrate judge's report may operate as a waiver of any further judicial review of the decision, as long as the parties receive clear notice of the consequences of their failure to object.  The rule is enforced under our supervisory powers and is a nonjurisdictional waiver provision whose violation we may excuse in the interest of justice." *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 38–39 (2d Cir. 1997) (internal quotation marks and citations omitted).

"Where a party only raises general objections, a district court need only satisfy itself there is no clear error on the face of the record.  Indeed, objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review.  Such objections would reduce the magistrate's work to something akin to a meaningless dress rehearsal." *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009) (internal quotation and editorial marks and citations omitted).  "In addition, it would be fundamentally unfair to permit a litigant to set its case in motion before the magistrate, wait to see which way the wind was blowing, and—having received an

unfavorable recommendation—shift gears before the district judge." *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (citation omitted).

    SO ORDERED.

                                                       __/s Hugh B. Scott_____
                                                       Hon. Hugh B. Scott
                                                       United States Magistrate Judge

DATED: April 29, 2020